**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**COVINGTON**

**CIVIL ACTION NO. 12-17-JBC**

**PENNY SMITH, PLAINTIFF,**

**V.** **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.**

* * * * * * * * * * * * *

This matter is before the court upon cross-motions for summary judgment on Penny Smith's appeal of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The court will grant the Commissioner's motion, R.19, and deny Smith's motion, R.18, because substantial evidence supports the administrative decision.

At the date of her disability filing, Smith was a 46-year-old woman with an eighth-grade education, in special education classes. AR 78, 368. She had past relevant work as a health aide. AR 397. On April 9, 2008, Smith applied for DIB, with a disability onset date later amended to July 31, 2005, due to pain, poor breathing, and a nonfunctioning kidney which required dialysis. AR 84-85, 133. After initial and reconsideration denials, Administrative Law Judge ("ALJ") Paul E. Yerian issued a decision on February 7, 2011 determining that Smith was not disabled within the meaning of the Social Security Act. AR 18-28. Under the traditional five-step analysis, 20 C.F.R. § 404.1520; *see also Preslar v. Sec'y of*

*Health and Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994), the ALJ determined that Smith had not engaged in substantial gainful activity since July 31, 2005, her alleged onset date, at any time through her Date Last Insured ("DLI") of March 31, 2007, AR 20; that she had "severe" impairments of degenerative changes in the cervical and lumbar spines, chronic renal insufficiency, hypertension, obesity, and borderline intellectual functioning, AR 21; that her impairments, whether considered singly or in combination, did not meet or equal any of the Commissioner's Listings of Impairments ("LOI"), considering especially LOI 12.05C, AR 21-23; that Smith retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with additional limitations of never climbing ladders, ropes, or scaffolds, occasionally stooping, kneeling, and crawling, a need to avoid exposure to hazardous machinery and unprotected heights, and limitation to simple, repetitive tasks, not involving fast pace or strict time and production standards, with the ability to maintain attention and concentration for two hour segments, AR 23; and that, based on her RFC, and the testimony of a vocational expert, jobs existed in significant numbers in the national economy which she could perform. AR 23. The ALJ therefore denied Smith's claim for DIB on February 7, 2011. AR 28. The Appeals Council denied her request for review on November 23, 2011, AR 8-10, and she commenced this action.

Smith challenges the ALJ's ruling on the ground that it was error to find that she did not meet the requirements of LOI 12.05C.

In order to meet the standards set out in LOI 12.05C for mental retardation, a claimant must first prove that she has a valid IQ score of 70 or below and "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset before age 22." 20 C.F.R. Pt. 404, Subpt. P, App.1, LOI 12.05. In addition to this requirement, a claimant must establish the required level of severity by showing "a physical or other mental impairment causing an additional and significant work-related limitation of function." *See id* at 12.05C. Smith argues that her school records establish significantly subaverage general intellectual functioning with onset before age 22, that her physical impairments prove that she had another work-related limitation of function, and that the ALJ abused his discretion by refusing to order adult IQ testing in order to provide evidence of IQ scores as an adult.

Smith points specifically to school records showing that she obtained an IQ of 65 at the age of eight years, two months, and an IQ of 64 at the age of 11 years, nine months. AR 181-83. She concedes that "intelligence test results obtained between the ages of seven and sixteen are considered to be current for four years if the score is less than forty, and for two years if the score is forty or above." *Elam ex rel. Golay v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003), *citing* 20 C.F.R. § 404, Subpt. P, App. 1, § 112.00D.

The ALJ reasoned that there were no valid IQ scores in the record which were obtained after the age of 16, and that under the regulations the earlier scores

"could not be considered as indicative of her functioning as an adult." AR 22. The ALJ went on to note that LOI 12.05C cannot be met based on IQ scores alone. The claimant must also show deficits in adaptive functioning manifested before the age of 22. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). He found that Smith's adaptive functioning was not consistent with a finding of mental retardation, because she was employed in unskilled competitive work for a number of years, performed a full range of daily activities, and had no reports of difficulty socializing with others or having problems in any of the adaptive domains other than academics, such as social skills, communication, and daily living skills. AR 22; *see West v. Comm'r of Soc. Sec.,* 240 Fed.Appx. 692, 698 (6th Cir. 2007). He concluded that Smith did not meet any of the criteria of 12.05C. *Id.*

Smith contends that the ALJ should have found that she had deficits in adaptive functioning based on her school records as well as a closer examination of her activities as an adult. She testified at the administrative hearing that her competitive work was as an unskilled nurse's aide, performing only personal care services, and she had not taken a test to become certified because the "head nurse" said she was not able to. AR 352, 368. For much of her life, she lived with her family members and relied on them for assistance with paying bills, reading mail, and shopping. AR 352-53, 366-67, 379, 382, 385.

The issue is not whether the evidence could have supported a contrary finding, but whether there is substantial evidence to support the finding the ALJ made. *See Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009).

Smith testified that she could follow directions and drive herself, could do household chores and visit flea markets, limited primarily by pain, could read some recipes, and would be able to write a note saying that she had gone to the store for milk. AR 353, 378-82, 385-6. She had worked full-time as a nurse's assistant from 1992 to 1995. AR 134. She was able to fill out standard forms relating to her disability, and, although she was a poor speller and may have misunderstood some of the questions, she did spell "dialysis" correctly and provided pertinent answers to most of the questions. AR 145-65. She also listed "reading" as one of her recreations. AR 163. This is substantial evidence to support the ALJ's determination.

Even assuming, for the sake of argument, that Smith's adaptive functioning was at the "mentally retarded" level, the ALJ did not have a duty to order a consultative examination. Generally, it is the plaintiff's burden to show by clear and convincing evidence that she is disabled. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1232 (6th Cir. 1993); 20 C.F.R. § 404.1512(a). The Commissioner's regulations provide that the agency "may" ask for additional evaluations if the claimant's medical sources "cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled…." 20 C.F.R. § 404.1517. The Sixth Circuit has interpreted this section as giving the ALJ discretion to order an examination. *See Foster*, 279 F.3d at 355; *Landsaw v. Sec'y of Health and Human Servs.,* 803 F.2d 211, 214 (6th Cir.1986); *see also Thornton v. Bowen*, 815 F.2d 80 (table), 1987 WL 36450 (6th Cir. 1987)

("Section 404.1517 does not, as Thornton contends, mandate a consultative exam in this or any disability determination. This section merely sets forth circumstances in which the Secretary may ask a claimant to undergo a consultative examination at the Secretary's expense.")

Smith cites an unpublished district court case from Ohio, *Johnston v. Comm'r of Soc. Sec.,* 2012 WL 1030462 (S.D. Ohio, March 27, 2012) in which the court found that the ALJ had failed in his duty to fully and fairly develop the record by refusing to obtain a consultative psychological examination with IQ testing. The ALJ does have a duty to fully and fairly develop the record, which rises to a special duty when a claimant appears unrepresented by counsel. *See Lashley v. Sec'y of Health and Human Servs.,* 708 F.2d 1048, 1051 (6th Cir. 1983). Such was not the case here, and there is some authority that the heightened duty to develop the record applies only to cases where the claimant is unrepresented. *See Ball v. Sec'y of Health and Human Servs.,* 931 F.2d 893, 1991 WL 66051 (6th Cir. 1991). "There is no bright line test for determining when the [ALJ] has...failed to fully develop the record...." and that the matter should be determined on a case by case basis. *Lashley* at 1051*.* As there is substantial evidence to support the ALJ's finding that Smith's adaptive functioning was not in the mentally retarded range, a referral for IQ testing would have been an idle formality, since even scores of 70 or below would not have sufficed to meet the requirements of LOI 12.05C. Therefore, the court finds no violation of the ALJ's duty to develop the record.

The ALJ having properly applied the relevant legal standards and his decision being supported by substantial evidence,

**IT IS ORDERED** that Smith's motion for summary judgment, R. 18, is **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 19, is **GRANTED.**

The court will enter a separate judgment.

Signed on December 10, 2012

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY